## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **H.C.**

**No. 17-0935** (Mercer County 17-JA-064)

**FILED**

**February 23, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother S.P., by counsel Elizabeth A. French, appeals the Circuit Court of Mercer County's September 20, 2017, order terminating her parental, custodial, and guardianship rights to H.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Mindy M. Parsley, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Elizabeth Davis, filed a response on behalf of the child also in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating her parental, custodial, and guardianship rights without first granting an improvement period.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

Petitioner has been diagnosed with Arthrogryposis, a condition which prevents her from moving her arms or legs and confines her to a motorized wheelchair. She gave birth to H.C. in 2008, and left H.C. in the care of her maternal grandmother soon afterward. The grandmother raised the child until approximately February of 2017, one month before the petition against petitioner was filed. Child Protective Services ("CPS") removed the child from the grandmother's home after learning that she and the child were living in a garden shed due to the grandmother's belief that her deceased husband was haunting her house. The child was only

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

permitted to bathe on Sundays and had to use the bathroom in a five-gallon bucket. CPS placed the child with petitioner and H.C.'s father, B.H., who was a registered sex offender.[2]

In March of 2017, only one month after the child was placed with petitioner and the father, the DHHR filed an abuse and neglect petition against the parents. The DHHR alleged that petitioner was unable to properly supervise the child, in part due to her condition, and allowed the father and other inappropriate people to supervise the child. Further, petitioner was prescribed controlled substances but could not produce the prescription bottles; she stated they were stolen. Due to the nature of her condition and the people frequenting her home, the DHHR suspected "drug activity."

In April of 2017, the DHHR filed an amended petition and alleged that petitioner allowed inappropriate people to live in the home with the child, including two individuals who had either had their children removed from their custody or had their parental rights terminated. Other persons frequenting the home included drug addicts and an individual substantiated by CPS as a sex offender. Petitioner allowed the child to sleep on a couch in the same room as the father, unsupervised, and allowed the child to leave the house unsupervised with the father and the CPS-substantiated sex offender. The DHHR alleged that petitioner knew that her medication was being stolen by someone living with her or frequenting her residence, and that petitioner was either unwilling or unable to prevent them from being in the home. Moreover, petitioner had been the subject of nineteen Adult Protective Services referrals, which the DHHR suggested showed her inability to secure her own safety and that of the child.

In June of 2017, the circuit court held an adjudicatory hearing during which petitioner stipulated to neglecting the child due to having inappropriate people in the home. Petitioner requested a post-adjudicatory improvement period. The circuit court accepted petitioner's stipulation and scheduled the dispositional hearing.

The circuit court held a dispositional hearing in September of 2017. The DHHR presented the testimony of several witnesses in support of their motion to terminate petitioner's parental, custodial, and guardianship rights. Several CPS workers testified that the child was out of petitioner's care for the vast majority of her life due to petitioner's physical disability. Petitioner was unable to physically care for herself or the child and exhibited poor judgment in the people she allowed near the child unsupervised, including the father, a sex offender, and

---

[2]The father pled guilty to first-degree sexual abuse of a minor in 2005. He served nine months in prison and then was placed on probation for ten years, the terms of which required him to register as a sex offender. Following his conviction, the father was granted supervised visits with H.C. beginning in 2009. When H.C. was placed with the parents around February of 2017, the protection plan implemented did not specifically state that the father was not to have unsupervised contact with H.C. It did state that he was not to be a part of her bathing or grooming. However, a CPS worker later testified at the dispositional hearing that there was a verbal agreement that he was not to have unsupervised time with H.C.

another CPS-substantiated sex offender. The witnesses testified that petitioner failed to consistently visit the child after 2012, did not provide for her financially, and did not have stable housing. In fact, petitioner's last two residences were motel rooms. Further, petitioner failed to present herself for required drug screening throughout the proceedings, only providing four out of seventeen drug screens. A service provider testified that petitioner had participated in supervised visitation, but that she observed no difference or improvement in her ability to take care of the child. The service provider also testified that petitioner allowed a CPS-substantiated sex offender to accompany her to a supervised visit with the child.

Petitioner then testified that she had not consistently visited with the child after 2014 because the grandmother did not want to bring her and petitioner often had no transportation. She testified that she did not know of the conditions her child was living in and had trusted the grandmother to take care of the child. Petitioner also testified that she purchased things for the child for holidays, birthdays, and when requested by the child, and stated that she maintained daily phone contact with her. When asked whether petitioner had anything else she would like to tell the circuit court, she stated that her friend, the CPS-substantiated sex offender, was not an actual registered sex offender and that he had "won" his case. She did not believe that he was a sex offender and explained that he had merely walked her to her supervised visit because she could not get there alone. After hearing the evidence, the circuit court found that there was no reasonable likelihood that petitioner could correct the conditions of abuse and that termination was necessary for the child's welfare. While the circuit court was sympathetic to petitioner's physical condition, it found that factors beyond her physical limitations, such as her exercise of bad judgment in the persons she allowed near the child, persisted even after DHHR intervention. Further, the circuit court found that petitioner had no stable housing and was physically unable to care for the child. Accordingly, the circuit court denied petitioner's motion for an improvement period and terminated her parental, custodial, and guardianship rights.[3] It is from the September 20, 2017, dispositional order that petitioner appeals.

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if

---

[3]The father's parental, custodial, and guardianship rights were also terminated in the proceedings below. The permanency plan for the child is adoption by her relatives.

the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

Petitioner argues on appeal that the circuit court erred in terminating her parental, custodial, and guardianship rights without first granting her an improvement period. We disagree. The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re: M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015) (holding that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period"); Syl. Pt. 6, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996) (holding that "[i]t is within the court's discretion to grant an improvement period within the applicable statutory requirements"). We have also held that a parent's "entitlement to an improvement period is conditioned upon the ability of the [parent] to demonstrate 'by clear and convincing evidence, that the [parent] is likely to fully participate in the improvement period . . . .'" *In re: Charity H.*, 215 W.Va. 208, 215, 599 S.E.2d 631, 638 (2004).

Here, the record establishes that petitioner failed to demonstrate her ability to fully participate in an improvement period. Petitioner argues that each of the reasons her rights were terminated, her disability, transience, and allowing inappropriate persons around the child, could all be easily remedied by an improvement period. Petitioner also argues that several witnesses testified at the dispositional hearing that she cooperated with services. However, petitioner ignores the fact that she failed to consistently visit the child after 2012 and completely stopped visiting after 2014. "We have previously pointed out that the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *Katie S.*, at 90, n. 14, 479 S.E.2d at 600, n. 14 (citing *In Interest of Tiffany Marie S.*, at 228 and 237, 470 S.E.2d at 182 and 191; *State ex rel. Amy M. v. Kaufman*, 196 W.Va. 251, 259, 470 S.E.2d 205, 213 (1996)).

Further, despite the circuit court ordering that she submit to drug screening, petitioner only appeared for four of required seventeen drug screens. Finally, petitioner allowed inappropriate people near her child and exercised poor judgment in whom she allowed in her home. At the dispositional hearing, petitioner testified that she did not believe her friend, a CPS-substantiated sex offender, was a sex offender because he had "won" his case. Petitioner also testified that she continued to maintain this friendship and attempted to explain that the friend had merely accompanied her to a supervised visit, stating that he stayed across the room from them. We have previously held that

[i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re: Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640 (2004)). Petitioner refuses to acknowledge that the people she allows near her child are dangerous or inappropriate, making an improvement period in this case futile. Accordingly, petitioner did not demonstrate that she was likely to substantially comply with the terms or conditions of an improvement period.

Moreover, we find no error in the termination of petitioner's parental, custodial, and guardianship rights. West Virginia Code § 49-4-604(b)(6) provides that circuit courts are to terminate these rights upon findings that there is "no reasonable likelihood that the conditions of neglect or abuse can be substantially corrected in the near future" and that termination is necessary for the child's welfare. Pursuant to West Virginia Code § 49-4-604(c)(3), a situation in which there is no reasonable likelihood that the conditions of abuse or neglect can be substantially corrected include one in which

> [t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare or life of the child.

The record demonstrates that there was no reasonable likelihood that petitioner could correct the conditions of abuse and neglect. Petitioner only participated in four drug screens throughout the proceedings below and did not visit with the child after 2014. Moreover, petitioner allowed inappropriate persons in the home and continued to exercise poor judgment in her friendships. Petitioner consistently denied that one friend was an inappropriate person to allow around her daughter, despite having knowledge of a former CPS case regarding his alleged sexual abuse of a young female relative. Petitioner also allowed individuals with open CPS cases to live with her. Further, petitioner did not maintain stable housing, as she lived in two hotels during the proceedings below, and only recently secured housing with a friend. Based on the evidence, it is clear that, even apart from petitioner's physical disability, there was no reasonable likelihood that she could correct the conditions of abuse and/or neglect and that termination was necessary for the child's welfare. As mentioned, circuit courts are directed to terminate parental, custodial, and guardianship rights upon such findings.

For the foregoing reasons, we find no error in the decision of the circuit court, and its September 20, 2017, order is hereby affirmed.

Affirmed.

**ISSUED**:  February 23, 2018

5

**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Robin Jean Davis
Justice Menis E. Ketchum
Justice Allen H. Loughry II
Justice Elizabeth D. Walker